OLIVER *v.* MACON HARDWARE COMPANY *et al.*

1. Primarily, a clerk in a mercantile establishment is not a "laborer," in the sense in which that word is used in section 1974 of the code, even though the proper discharge of his duties may include the performance of some amount of manual labor. If the contract of employment contemplated that the clerk's services were to consist mainly of work requiring mental skill, or business capacity, and involving the exercise of his intellectual faculties, rather than work the doing of which properly would depend upon a mere physical power to perform ordinary manual labor, he would not be a "laborer." If, on the other hand, the work which the contract required the clerk to do was, in the main, to be the performance of such labor as that last above indicated, he would be a "laborer." In any given case, the question whether or not a clerk is entitled, as a laborer, to enforce a summary lien against the property of his employer, must be determined with reference to its own particular facts and circumstances.

2. Although the intervention filed in the present case alleged in general terms that the intervenor was a clerk, that the amount he claimed was due him for services and labor performed as a clerk, and that as such clerk he performed manual labor, yet as it failed by other appropriate allegations to show to which of the classes above indicated he belonged, it was bad for uncertainty and properly dismissed on demurrer.

March 23, 1896.   Argued at the last term.

Intervention.   Before Judge Hardeman.   Bibb superior court.   April term, 1895.

*Alexander Proudfit*, for plaintiff.
*Dessau & Hodges*, for defendants.

LUMPKIN, Justice.

Some confusion has arisen in the decisions of this court with reference to the question whether or not a "clerk" employed in a store, office, or other place of business, is a "laborer" within the meaning of sections 1974 and 3554

of the code—the former giving "laborers" a general lien for their labor upon the property of their employers, and the latter exempting the wages of "laborers" from the process of garnishment.

In *Butler, McCarty & Co.* v. *Clark & Co.*, 46 *Ga.* 466, the question arose as to whether the wages of one employed in a mill as "receiving and shipping clerk," and who "performed any other duties required of him" by his employer, were subject to garnishment. In dealing with the case, this employee was treated as "a hired workman," and accordingly adjudged to be a laborer within the meaning of the statute.

In *Claghorn & Cunningham* v. *Saussy*, 51 *Ga.* 576, the monthly wages of a "forwarding clerk" in the employment of a railway company were held not to be subject to the process of garnishment. It was the duty of that clerk to attend daily to the forwarding of goods, and to render other services which necessarily required the performance of a considerable amount of manual labor.

This case is cited in *Oliver* v. *Boehm, Bendheim & Co.*, 63 *Ga.* 172, where it was decided that a person "employed as clerk, bar-tender, and boy of all work, to labor in and about a retail grocery and liquor store," was a laborer entitled to the lien provided for by section 1974 of the code. The scope of this boy's employment seems to indicate that the greater part of his work consisted of manual labor, rather than of services requiring mental or intellectual skill and capacity. Indeed, in *Richardson et al.* v. *Langston & Crane*, 68 *Ga.* 658, Justice Crawford, in referring to *Oliver's* case, said "he specifically set out at length the actual manual labor which he performed." The learned Justice doubtless referred to the record of the case, as only the head-note of the decision is reported in 63d *Ga.* In *Richardson's* case, the court ruled that an affidavit to foreclose a laborer's lien, in which it was alleged that the defendants, merchants selling dry goods and groceries, were

indebted to deponent "for services rendered as·clerk, laborer and general service in said store," was not demurrable as not sufficiently setting out the fact that the plaintiff was a laborer. The opinion was written by Justice Crawford, who dissented from the judgment. We make the following extract from his comments on the case: "I do not understand that clerks, or persons doing general service, although they may labor, are therefore laborers in legal contemplation. If they are to be included in the general term laborers, then I see no limit to the exercise of this extraordinary right of having execution on oath, by all agents and employees, such as cashiers, tellers and book-keepers of banks, secretaries, treasurers, book-keepers, salesmen and superintendents of manufacturing companies, as well as all the officials in railroads below the president, whether in the offices or on the roads. To enlarge upon class legislation by implication should not be the policy of courts, and especially so where *ex parte* summary remedies are allowed."

We will next notice the case of *Hinton* v. *Goode & Crumbley*, 73 *Ga.* 233, in which it was decided that: "One who is employed merely to labor as clerk in a store is not such a laborer as is contemplated by §1974 of the code, giving a lien to a laborer on the property of his employer." Justice Blandford, who delivered the opinion of the court, said: "Laborers, as used in the statute, mean what were generally and universally known as laborers at the time of the passage of the act. A laborer is one who works at a toilsome occupation—a man who does work requiring little skill, as distinguished from an artisan —sometimes called a laboring man. (Webster.) Clerks, agents, cashiers of banks, and all that class of employees, whose employment is associated with mental labor and skill, were not considered laborers, and were not intended by the statute to be embraced therein as laborers, so as to have a lien for their wages. And this is the effect of the previous rulings of this court."

In *Ricks* v. *Redwine, Ibid.* 273, it was held that: "A clerk employed in a store or other establishment, unless he performs manual labor, is not a laborer entitled to have a lien upon his employer's property which can be summarily enforced." In that case, Justice Hall observed that all the former cases on the subject were reviewed in the case of *Hinton, supra.*

In *Lamar* v. *Chisholm,* 77 *Ga.* 306, it was held that the wages of a clerk and book-keeper were not subject to garnishment, citing *Smith* v. *Johnson,* 71 *Ga.* 748, which was a case involving the right to garnish the wages of a railroad clerk. Then follows the case of *Abrahams* v. *Anderson et al.,* 80 *Ga.* 570, which is substantially on the same line, and cites a number of cases, including several of those above mentioned.

This brings us to the case of *Briscoe et al.* v. *Montgomery & Co.,* 93 *Ga.* 602, holding that a "commercial traveler" was not a day-laborer whose wages were exempt from the process of garnishment. In the course of a very brief discussion of that case, the writer remarked: "It is obvious that, in the discharge of his duties, a clerk and book-keeper must necessarily perform a considerable amount of manual labor." It was not necessary, however, in that case, to go to the bottom of the subject with which we are now dealing, and this accounts for the evident looseness of the expression last above quoted.

We think all the cases previously decided can be reconciled and harmonized by adopting the line indicated in the first head-note of the present case. It states the idea about as clearly as we can express it. Every human being who follows any legitimate employment, or discharges the duties of any office, is, in a very broad sense, a "laborer." The President of the United States, the Governor of this State, and the Justices of this Court are all laboring men, in the sense that they do a great deal of hard wark, much of which is, indeed, attended with physical and muscular

exertion; but, at the same time, they cannot properly be termed "manual laborers," either in the popular sense in which these words are used and understood, or in the sense in which the term "laborers" was employed in the statutes under consideration. The legislature manifestly had reference to the work in which such "laborers" were engaged, rather than to the particular designation by which they were usually distinguished one from the other.

In determining whether a particular clerk, or other employee, is really a "laborer," the character of the work he does must be taken into consideration. In other words, he must be classified—not according to the arbitrary designation given to his calling, but with reference to the character of the services required of him by his employer. The head-note indicates the rule to be followed in assigning him to that class to which he rightfully belongs.

2. From the foregoing, it follows that an intervention filed in an equitable proceeding containing only the allegations set forth in the second head-note was bad for uncertainty, because it entirely failed, by other appropriate allegations to show that the intervenor belonged to that class of "clerks" entitled to liens as laborers.

*Judgment affirmed.*