In re Bruce A. DEAN, Debtor.

Bruce A. DEAN, Plaintiff,

v.

STATE FARM MUTUAL INSURANCE COMPANIES, Defendant.

Bankruptcy No. 87–11396.
Adv. No. 88–0160.

United States Bankruptcy Court, N.D. Alabama.

Sept. 2, 1988.

John Davidson, Birmingham, Ala., for plaintiff.

Ronald S. Held, Birmingham, Ala., for defendant.

Thomas E. Reynolds, Birmingham, Ala., trustee.

## MEMORANDUM OF DECISION

### GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court on the Debtor's Complaint to Determine Debtor's Exemptions and for Declaratory Judgment. After a hearing and consideration of applicable law, it is the opinion of this Court that the Debtors complaint is due to be DENIED. This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

The facts in this case. have been stipulated to by both parties and are as follows: The Debtor/Plaintiff, Bruce A. Dean, was an insurance sales agent for the Defendant, State Farm Mutual Insurance Companies under his State Farm's Agent Agreement until May 31, 1986 when Mr. Dean terminated his Agent's Agreement. At that time, Mr. Dean became conditionally entitled to certain termination payments. These payments are based on the number of personally produced policies credited the agent's account on the date of termination. The termination payments are paid in sixty (60) monthly installments beginning one (1) month after termination. Mr. Dean began receiving his termination payments in June, 1986. Thereafter, on or about December 18, 1987, Mr. Dean filed his petition under Chapter 7 of the U.S. Bankruptcy Code. State Farm continued to make termination payments direct to Mr. Dean until February, 1988 when Thomas E. Reynolds the Trustee of Mr. Dean's bankrupt estate, demanded that all future payments be made to him claiming that the installment payments due Mr. Dean are property of the bankrupt estate pursuant to 11 U.S.C. Section 541. Thereafter, beginning in February, 1988,

Mr. Dean's termination payments have, in fact, been made to Thomas E. Reynolds, Trustee. Thereafter, the Debtor, Bruce A. Dean, filed his Complaint to Determine Debtor's Exemptions and for Declaratory Judgment claiming the termination payments exempt under the Code of Alabama 1975 Section 6–10–7 and Section 6–10–6. Thomas E. Reynolds, the Trustee, thereafter filed his Counterclaim essentially alleging that the payments due from State Farm do not identify any deduction for social security, federal, state or local taxes and that the payments constitute property of the estate and that said funds are not subject to exemption as alleged by the debtor.[1]

This Court must now decide whether, on the facts before it, the termination payments from State Farm are exempt under Section 6–10–6 or Section 6–10–7 of the Code of Alabama, 1975.

## CONCLUSIONS OF LAW

The Plaintiff has conceded[2] at the outset of this case that in order for the debtor to be entitled to the termination payments no further personal services are required of the debtor and that the termination payments have been fully earned pre-petition by the debtor. This being so, both parties agree that the termination payments are property of the estate.[3] The question now becomes whether Section 6–10–6 and Section 6–10–7 of the Code of Alabama apply to the termination payments.

## APPLICATION OF SECTION 6–10–7

Section 6–10–7 provides in pertinent part: The wages, salaries or other compensation of *laborers* or *employees*, residents of this state, for personal services, shall be exempt from levy under writs of garnishment or other process for the collection of debts contracted or judgments entered in tort in an amount equal to 75 percent of such wages, salaries or other

compensation due or to become due to such laborers or employees, and the levy as to such percentage of their wages, salaries or other compensation shall be void.... (underlining for emphasis)

Section 6–10–7 Code of Alabama (1975). The threshold question of this section turns on whether the debtor can be classified as a LABORER or EMPLOYEE.

## LABORER

The test for determining who is a laborer has been set out in *Oliver v. Macon Hardware Co.*, 98 Ga. 249, 25 S.E. 403, 404 (1896) as whether the individual's duties, "consists manly of work requiring mental skill or business capacity, and involving the exercise of his intellectual faculties, rather than work the doing of which properly would depend upon mere physical power to perform ordinary manual labor." It is the later part of this test that defines a laborer. A laborer is one whose duties are mainly physical or toilsome and not mental. *Howel v. Atkinson*, 3 Ga.App. 58, 59 S.E. 316 (1907). Each case requiring the determination of laborer status is to be, "determined with reference to its own particular facts and circumstances" and "the character of the work ... must be taken into consideration." *Oliver v. Macon*, 25 S.E. at 404. In the case at bar, it is clear the Debtor's responsibilities were predominately mental or intellectual. Although the Debtor may have had to exert physical effort in meeting with clients and discussing various insurance policies, this minimal physical labor does not preponderate over the intellectual aspect of his duties and thus the debtor does not meet the definition of laborer.

## EMPLOYEE

Section 6–10–7 also includes "employee" within its purview. The test for establishing an employer/employee relationship is stated in *Ex parte Board of School Commissioners of Mobile County,*

---

1. Plaintiff's Memorandum Brief and Defendant's Reply Brief.

2. Plaintiff's Memorandum Brief p. 5.

3. See *In re Marshburn,* 5 B.R. 711 (Bkrpt Col. 1980).

235 Ala. 82, 178, So. 63, granting cert. *Daves v. Rain,* 28 Ala.App. 54, 178 So. 59 (1937) as, "the relationship of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, as, in other words, not only what shall be done, but how it shall be done." The characteristics of an employer/employee relationship are further set out in *Porter v. St. Louis–San Francisco Railway Co.,* 354 F.2d 840, 843 (5th Cir.) 1966 as:

> The essential characteristic of the master and servant relation is the retention by the employer of the right to direct and control the manner in which the work shall be performed, the right to determine not merely the result but the methods and means by which such result is to be accomplished.
>
> Citing 56 C.J.S. Master and Servant Section 2d(1), p. 33.

*Porter v. St. Louis–San Francisco Railway,* 354 F.2d at 843 also distinguished the employer/employee relationship from an independent contractor relationship and defined an independent contractor as:

> An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work; an independent contractor is not a servant, and there is not master and servant relation between his servants and the employer or contractee.
>
> Citing 56 C.J.S. Master and Servant Section 3(1) p. 41.

The State Farm Agent's Agreement that was entered into by the Debtor states in Section 1(B):

> You are an *independent contractor* for all purposes. As such you have full control of your daily activities, with the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this agreement. (Underlining for emphasis)

The Preamble to the State Farm Agent's Agreement explicitly states the existence of an independent contractor relationship by declaring in paragraph one:

> The purpose of the agreement is to reduce to writing the objectives, and responsibilities essential to the relationship between the agent, operating as an *independent contractor,* and State Farm. (Underlining for emphasis)

Paragraph two of the Agent's Agreement states:

> You [the agent] have chosen this *independent contractor relationship* ... in preference to one which would place you in employee status. (Underlining for emphasis)

Clearly the State Farm Agent's Agreement and the conduct of the debtor place him in an INDEPENDENT CONTRACTOR STATUS and not an EMPLOYEE status. This being so, the debtor has failed to come within the bounds of Section 6–10–7 and thus the provisions of Section 6–10–7 are not available to the debtor.

## APPLICATION OF SECTION 6–10–6

■ The question remains as to the applicability of Section 6–10–6 to the termination payments. Section 6–10–6 provides:

> The personal property of such resident to the extent of the resident's interest therein, to the amount of $3,000.00 in value, to be selected by him or her, and, in addition thereto, all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family shall also be exempt from levy and sale under execution or other process for the collection of debts.

Section 6–10–6 Code of Alabama (1975). This section does not turn on "laborer" or "employee" status and is available to all persons claiming its protection as to personal property. The debtor may used 6–10–6 to exempt only the portion of the termination payments that bring him up to the $3,000.00 limit, after first taking into consideration assets already claimed ex-

empt under this section in the debtor's petition.

## CONCLUSION

The Court finds that Section 6–10–7 of the Code of Alabama is not applicable to the debtor and that Section 6–10–6 of the Code of Alabama may be used by the debtor only after first taking into account the personal property exemptions already claimed by the debtor and only to the extent that the termination payments bring the debtor within the $3,000.00 limit set out in Section 6–10–6.

This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order will be entered in accordance with the foregoing.