JACOB CARAKER, plaintiff in error, vs. J. M. & H. F. MATHEWS, defendants in error.

The Act of 1845, (*Cobb*, 88,) exempting journeymen mechanics and laborers from the process and liabilities of garnishment on their daily, weekly or monthly wages, is not repealed by the attachment and garnishment Act of 1856, and extends to overseers who, by agreement with their employers, are to be paid their wages daily or weekly, to enable them to supply the necessaries of life to their families.

Garnishment, from Talbot. Tried before Judge WORRILL, September Term, 1857.

J. M. & H. F. Mathews held an execution against Hamlin Jordan. Jordan was in the employ of Jacob Caraker, as

overseer, under an agreement that he was to be paid his wages daily or weekly, in order that he might be enabled to furnish his family with the necessaries of life. Caraker paid him the wages as they accrued, under the agreement. J. M. & H. F. Mathews garnisheed Caraker. At the time of service of the garnishment, Caraker owed Jordan nothing, but still continued, after the garnishment, to pay Jordan his wages as they accrued under the agreement.

The Court charged the jury, that the Act of the Legislature, " to authorize the issuing of attachments and garnishments, and to regulate proceedings in relation to the same, and for other purposes therein mentioned," Approved March 4th, 1856, repealed the act " to exempt journeymen mechanics and laborers of this State from garnishment of their wages," approved December 27th, 1845. Whereupon the counsel for garnishee excepted to said charge of the Court, and assign the same as error.

Smith & Pou, for plaintiff in error.

R. M. Willis, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

By the Act of 1845, *(Cobb*, 88,) all journeymen mechanics and day laborers are exempt from the process and liability of garnishment on their daily, weekly or monthly wages, whether in the hands of employers or others. The Judge in this case decided, that the debtor was not entitled to the benefit of this Act, upon the ground that the Act of 1845, was repealed by the attachment law of 1856. It is pretty clearly to be inferred, that had he thought otherwise, he would have given to this defendant the benefit of the protection of this statute.

We have ruled several times during the present Term, that the Act of 1845 was not repealed by the Act of 1856. The

judgment in this case would, therefore, necessarily have to be reversed, unless it can be supported on other grounds.

Counsel for the creditors contends that an overseer employed as the defendant was, does not come under the Act 1845. That it applies to ditchers, and such like persons, who usually work by the day, week, or month. After exempting salaried officers of corporations from this process, as the law expressly does, it would require a very rigid construction of the Act of 1845, not to extend it to such a case as this. The defendant, for the reason that he was unable to maintain his family, unless he could get his wages daily or weekly, his employer assented to the arrangement, rating the defendant's services at $250 per annum. The overseer entered upon his employment. During the year, his employer was garnisheed. At the date of the service of the process, he had overpaid his overseer, and was in advance to him $8 at the time. For the rest of the year, he continued to settle with him as before. Is the employer responsible for the overseer's wages? We think not.

True, the overseer was to work for the year; still, he was to be paid daily or weekly. And the proof is, that without this stipulation, the contract would not have been made, inasmuch as the overseer's family were obliged to live. Had the creditor the right to break up this contract? Could the Courts do it? Was it not a lawful agreement? Were not the stipulations for labor and pay, daily or weekly, mutual and dependent? And to sustain this proceeding, would it not be, in effect, to hold that a third person may interpose and dissolve, at pleasure, the contracts of others? For, to deprive the overseer's family of the means of support, was, of course, to terminate the contract.

The creditor in this case claims to get his money under this contract. He must take the whole contract, not merely that which obligates the overseer to work at the rate of $250 per annum, but also, that which entitles the overseer to be paid the *pro rata* proportion of this sum daily or

weekly. The creditor cannot claim a benefit by virtue of this contract, and at the same time seek to violate it.

It is suggested that he is paying a debt which he is bound to discharge. In point of fact, this is not true. The employer would be made to pay his overseer's debt, because, according to the agreement between them, he has furnished food and raiment to his wife and children, to save them from suffering and want. The family of the overseer is entitled to this subsistence from his hands before any creditor, I care not how meritorious his demand may be. *Women and children must have bread.* The journeyman mechanic and employees of banking and railroad corporations are exempt from this process, shall the family of the poor overseer starve who earns their daily food by the sweat of his brow? Such could not have been the meaning and intention of the Legislature.

Right or wrong, the Legislature has indicated its policy in this respect. It should not be restricted, when sought to be applied to a class quite as needy, and meritorious too, as others who are confessedly exempt. We think it no straining of the statute, to consider the debtor in this case, under his special contract, *a day laborer*, in the language of the law, entitled to daily, weekly or monthly pay.

It may be argued, that if money accumulated under such a contract, it could be reached by process of garnishment. It is reply enough to make, that none has accumulated. The money has been advanced as fast as it was earned. Under such a contract, none ever would accumulate; for the debtor, if not paid, would have sought other employment. He could not see his wife and children perish for lack of the necessaries of life, and he made his contract to prevent such a result.

Again, it may be said, there will be no stopping place if overseers are brought under this Act. *I don't know that there ought to be any.* There ought to be no *class legislation* in this country. All who come within the spirit of the

Act, should be brought within its provisions. I know no reason why the employees of corporations, or even journeymen mechanics, aye, or even Irish ditchers, should have privileges, withheld from those who till the earth. The cravings of hunger can no more be appeased in the one case, than the other.

The garnishment Acts are wise and salutary provided they are confined to the exigency which gave them birth. Where debtors have effects in the hands of others, or others are indebted to them by note, account, &c., and these assets cannot be reached by levy and sale at law, this is a convenient remedy. They are liable to be greatly abused, however; and if they are to be perverted to wrenching the humble morsel from the mouths of women and children, provided by rough toil of the husband and father, then I say, let them be modified, or altogether abolished.

Judgment reversed

McDONALD, J. concurring.

BENNING, J. dissenting.

The contract was, that Jordan was to be Caraker's overseer for a year, at the price of $250, two hundred or two hundred and fifty pounds of pork, and thirty bushels of corn— the money to be paid daily, or weekly, as it might be needed for the support of Jordan's family.

The question is, whether the debt resulting from Caraker to Jordan from his contract, was subject to garnishment for Jordan's debts.

The Court below held that it was; and I think the decision was right.

In opposition to the decision Caraker's counsel rely on the act of 1845, which is in the following words: " That from and after, the passage of this act, all journeymen mechanics and day laborers shall be exempt from the process and liabil-

ties of garnishment, on their daily, weekly, or monthly wages whether in the hands of employers or others."

But an overseer is not, in my opinion, a journeyman mechanic or day laborer. Certainly, he is not a journeyman mechanic. Is he a day laborer? I think not.

I think he is not a "laborer" at all. As well might we say, that the superintendant of a factory, or of a railroad, or of a counting house, is a laborer.

The term, laborer, as I understand its import, is not applicable to any one who does not earn his living by the work of his hands; as, by plowing, hoeing, mowing, ditching, carrying a hod, feeding the fire of an engine, &c.

But, surely, an overseer, under such a contract as the present, is not a *day* laborer. He is bound for a year, not for merely a day, or a week. True, it may be, that his *pay* will be daily or weekly, but that does not prevent his *engagement* from being for a year. A day laborer, I take it, is one whose *engagement* to labor, is but a day long. At the end of each day, both he and *his* employer are free.

I think, then, dissenting from this Court, that the judgment excepted to, was right.