## Case No. 7,118.

### The J. A. BROWN.

[2 Lowell, 464.] [1]

District Court, D. Massachusetts. March, 1876.

LOWELL, District Judge. James Gammons, Jr., owner of ten-sixteenths of the bark J. A. Brown, which has been sold under a decree of this court, represents that he bought nine of his ten shares at an auction sale, made by the owner of the shares a few days before this libel was filed; that at the time of this sale a libel was pending in the court for the mate to recover his wages earned on the last voyage, of which the claimant was not aware; that he afterwards paid the wages and costs. and he asks to be subrogated to the privilege of the mate against the proceeds in the registry. This motion is resisted by the mortgagee of a part of the vessel. I informed counsel at the argument that I had decided some years since, in The Tangier [Case No. 13,744], that subrogation was often administered in the admiralty, and that the limitations attempted to be imposed on that doctrine in The Larch [Id. 8,085], could not be sustained as

[1] [Reported by Hon. John Lowell, LL. D.. District Judge, and here reprinted by permission.]

law beyond the exact decision in that case.

When a vessel is unfortunately incumbered with liens and hypothecations of various kinds beyond her full value, the wages of the last voyage have precedence over all earlier charges, such as a bottomry bond given at the beginning of that voyage; and in such cases one who pays the wages is often subrogated to the rank of the seamen, on the ground that he has saved expense, and has given the seamen their money promptly, and only arrived at the result which the court would have reached. The owner, or part owner, is not excluded from the right of subrogation, when the justice of the case is with him, as for example, when the wages are not a personal debt of his own, or for any other reason he has equities as against the other parties. It has become the practice in England to require the person intending to pay the wages to apply to the court in the first instance. Besides The Tangier above mentioned, I have allowed subrogation in some cases not strongly contested, I believe, certainly not reported. The following English cases may be referred to: The William F. Safford, Lush. 69; The Kammerhevie Rosenkrants, 1 Hagg. Adm. 62; The John Fehrman, 16 Jur. 1122; The Adolph, 3 Hagg. Adm. 249; The Janet Wilson, Swab. 261. I explained in The Tangier that the modern English practice is to require the person desiring subrogation to apply to the court before making the payment; but this is only a rule of practice, and is not strictly insisted on in all cases: The Cornelia Henrietta, L. R. 1 Adm. & E. 51. It appears to me, on a consideration of the circumstances of this case, that I ought to give to the claimant the subrogation which I should undoubtedly have granted to the mortgagee if he had paid the wages. It may be said that he was paying his own debt; and he might be made liable, no doubt, for the whole wages, if the other owners were insolvent, as I suppose they were; but it appears that the freight was supposed to have been applied to the wages, and that there was enough for that purpose; but it was wrongly used as an agent, and Mr. Gammons was obliged to pay the whole, when in equity he was only liable for one-sixteenth. I do not see that, as between him and the mortgagee, he was bound to guarantee the solvency of his co-owners, or the due application of the freight. The mortgagee might have secured himself by taking possession of the vessel before her last voyage, or at any time before the freight was fully earned; but then he would have been liable for the wages. I find good ground, therefore, to say, that as to fifteen-sixteenths of the wages and taxable costs paid by Mr. Gammons, he ought to be subrogated to the right of the mate. It is understood, of course, that the petitioner is not attempting to compete with his own creditor. The debt secured by mortgage is not his debt. Petition granted.