84  537
s184s144

# Wallace Heckman, Assignee of the American Paper Company, v. Herman Tammen et al.

1. PREFERENCES—*Labor Claims.*—The act of June 21, 1895, entitled " An act to amend an act entitled 'An act to protect employes and laborers in their claims for wages,'" approved June 15, 1887, providing that in certain cases debts owing to laborers or servants, which have accrued by reason of their labor or employment, shall be considered and treated as preferred claims, is to be liberally construed, and applies to all such as perform physical labor in and about the business of the employer, whether such labor be skillful or ordinary.

2. LABOR—*Defined.*—The terms "work," "labor," "servant" and "laborer," as used in statutes of this character, includes all service, the rendering of which involves physical labor in an employer's business.

· 3. LABORERS' LIENS—*When Paramount to Prior Mortgages.* — A statute in force when a chattel mortgage is executed may operate to thereafter create a lien paramount to the lien of such mortgage.

4. STATUTES—*Priority of Laborers' Liens—Chattel Mortgages.*—The act of June 1, 1895, entitled " An act to amend an act to protect

employes and laborers in claims for wages," approved June 15, 1887, providing that in certain cases, debts owing to laborers and servants shall be treated as preferred claims, gives a priority to such claims over prior chattel mortgages.

Interpleader.—Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1898. Affirmed. Opinion filed July 20, 1899.

Statement.—This is an appeal from a decree in a suit of interpleader, wherein appellant and appellees were claimants of a fund held by Joseph Ditto, who filed the bill of interpleader. The facts are as follows : George H. Morrill & Company held a chattel mortgage upon a printing plant, the property of, and used by, Edward Beeh, Jr., in his printing business. Morrill & Company foreclosed upon December 7, 1897, by having Ditto, a constable, take possession and proceed to sell under the mortgage. Upon sale $1,125 was realized, and after satisfying the mortgage of Morrill & Company and costs, charges, etc., there was left in the hands of Ditto a balance of $517.59.

At the time Ditto took possession of the plant, Edward Beeh, Jr., was and ever since has been insolvent, and it is admitted that an actual suspension of the business occurred at the time of the foreclosure of the chattel mortgage. Within thirty days after the said 7th day of December, 1897, the day of the suspension, appellees, labor claimants of the said Edward Beeh, Jr., duly filed their claims with said Ditto, in accordance with the terms of the act of 1895, entitled " An act to protect employes and laborers in their claims for wages," and each one of the claims showed in accordance with the statute named, first, the amount due; second, the kind of work for which said wages were due; and third, the time when performed; and each laborer claimed the benefit of the act aforesaid. No exceptions were filed to any of the said labor claims.

The first, second, third, fourth and last of said sworn statements are for wages as compositor; the fifth is for wages as cylinder feeder; the sixth, seventh and eighth are

Heckman v. Tammen.

for wages as pressman; and the ninth, being that of appellee Newitt, is for wages as clerk. This claim is further described in the report of the master in chancery as being "for wages as general clerk in store and purchasing supplies, etc."

The American Paper Company, of which appellant is assignee, had a second mortgage upon the same property covered by the mortgage of Morrill & Co, which was duly executed and recorded upon the 1st day of March, 1897, prior to the time when the labor claims had begun to accrue but subsequently to the enactment of the labor law of this State, and, after the foreclosure aforesaid, but before the sale, the assignee of the said American Paper Company, Wallace Heckman, placed his mortgage in the hands of the said Joseph Ditto, constable, with instructions to foreclose the same.

Ditto, being uncertain as to whom the balance remaining in his hands should be paid, filed his bill of interpleader, setting up the facts substantially as aforesaid, and, in effect, asking for a determination by the court as to whether the appellees, under the act of 1895, protecting employes and laborers in their claims for wages, or the appellant, under the chattel mortgage given to the American Paper Company as aforesaid, are entitled to the surplus thus remaining in the hands of the complainant.

The master found the facts substantially as set forth above and gave the four following conclusions of law as applicable thereto:

First, the statute under consideration gives a preference for wage claims to wage-earning employes other than mere laborers and servants.

Second, this statute applies where the business of a person is suspended by the action of creditors in foreclosing a chattel mortgage, and where statements under oath, conforming with the statute, are filed within thirty days with the person in possession of the mortgaged property, as agent or mortgagee foreclosing.

Third, claims or statements under oath, on their face con-

forming to the statute and filed within thirty days as last aforesaid, can not be contested except in the manner provided by the statute.

Fourth, the preference given to such employes for wages is in legal effect a lien, and such lien is superior only to claims of general creditors, but such lien is not superior to the lien of the prior mortgage, executed according to the laws of this State, duly filed for record before the lien for such wage claims were perfected by the suspension of business, in the manner provided by statute.

He recommended, in accordance with the fourth conclusion, that the said sum of $517.39 be paid over to Wallace Heckman, as assignee of the American Paper Co. To this report objections were filed by both appellants and appellees, the objections of the appellees being to the fourth conclusion of law. These objections were afterward ordered to stand as exceptions, and upon argument before the court the exceptions filed by the appellees were sustained and a decree entered adjudging the said sum to belong to appellees.

From that decree this appeal is prosecuted.

HECKMAN, ELSDON & SHAW, attorneys for appellant, contended that the labor claimants in this case are not within the statute of 1895, entitled "An act to protect employes and laborers in their claims for wages." 2 Starr & Curtis' Stat. (2d Ed.) Chap. 82, par. 56.

Such statutes are in derogation of the common law, and are always to be strictly construed against persons seeking to bring themselves within their provisions. Butler v. Gain, 128 Ill. 23; McDonald v. Rosengarten, 134 Ill. 126; Williams v. Vanderbilt, 145 Ill. 238; Griffin v. Booth, 152 Ill. 219; McIntosh v. Schroeder, 154 Ill. 520.

SMITH, HELMER, MOULTON & PRICE, attorneys for appellees.

The claims of appellees are within the statute of 1895, entitled, "An act to protect employes and laborers in their claims for wages." Chap. 38A, Hurd's Revised Statutes; Pendergast v. Yandes, 124 Ind. 159; Capron v. Strout, 11

Nev. 304; Conlee Lumber Co. v. Ripon Lumber & Mfg. Co., 66 Wis. 489; Knight v. Norris, 13 Minn. 473; Gurney v. Atlantic & Gt. West. R. R. Co., 58 N. Y. 358; Wakefield v. Fargo, 90 N. Y. 218; Williamson v. Wadsworth, 49 Barb. (N. Y.) 294; Grainger v. Aynsley, 6 Q. B. D. 182; Whiteley v. Armitage, 13 Weekly Rep. 144; Am. & Eng. Ency. 532; Conant v. Van Schaick, 24 Barb. (N. Y.) 87; Bass v. Doerman, 112 Ind. 390; Flagstaff Silver Mining Co. v. Cullins, 104 U. S. 176.

The legislature did not intend, by the act of 1887 or the amendatory act of 1895, to confine the benefits thereof to mere laborers and servants, in the limited and restricted meaning of those terms. Palmer v. Van Santvoord, 153 N. Y. 612; Malcomson v. Wappoo Mills, 86 Fed. Rep. 192; Conlee Lumber Co. v. Ripon Lumber & Mfg. Co., 66 Wis. 489; Buck v. Payne, 50 Miss. 648; Garr v. Clements (N. D.), 62 N. W. Rep. 640; Sitton v. DuBois (Wash.), 45 Pac. Rep. 305, Aurora National Bank v. Black, 129 Ind. 599; Warren v. Sohn, 112 Ind. 213.

(a) The preference given by the labor statute of 1887 and the amendatory act of 1895 to wage claimants is superior to the lien of a chattel mortgage duly executed according to the laws of the State of Illinois after the said act was passed, but before the services had been performed by the said wage claimants, and (b) the statute is not for that reason unconstitutional. State v. Ætna Insurance Co., 117 Ind. 251; Dunklee v. Crane, 103 Mass. 470; Mayor v. O'Neill, 32 N. J. Eq. 386; Jones on Chattel Mortgages, Sec. 474, 475, 535; Reynolds v. Black, Trustee, 91 Ia. 1; St. Paul Title Insurance & Trust Co. v. Diagonal Coal Co. (Iowa), 64 N. W. Rep. 606; Bell v. Hyner (Ind.), 44 N. E. Rep. 576.

Mr. Presiding Justice Sears delivered the opinion of the court.

It is contended by counsel for appellant that the decree of the Superior Court, giving preference to the claims of appellees, as employes of the insolvent, over the claim of appellant, as a chattel mortgage lien holder, is erroneous,

both because the appellees do not come within the class of persons provided for by the statute, and because their claims could not in any event be decreed to be superior to the chattel mortgage lien.

The labor claimants, appellees, were decreed a preference over the chattel mortgage, by virtue of the act of June 21, 1895, in force July 1, 1895, entitled " An act to amend an act entitled ' An act to protect employes and laborers in their claims for wages, approved June 15, 1887, in force July 1, 1887.' " The first section of this statute is as follows:

"That hereafter when the business of any person, company or firm shall be suspended by the action of creditors, or be put into the hands of a receiver or trustee, then in all such cases the debts owing to laborers or servants which have accrued by reason of their labor or employment, shall be considered and treated as preferred claims, and such laborers or employes shall be preferred creditors, and shall be first paid in full, and if there be not sufficient to pay them in full, the same shall be paid from the proceeds of the sale of the property seized; provided, that any person interested may contest any such claim or claims, or any part thereof, by filing exceptions thereto supported by affidavit, with the officer having the custody of such property, and thereupon the claimant shall be required to reduce his claim to judgment, before some court having jurisdiction thereof, before any part thereof shall be paid."

It was stipulated in the record that the business of Beeh was actually suspended on December 7, 1897, by the action of said Morrill & Co. in taking possession of said printing plant under their chattel mortgage.

First.    It is contended that appellees do not come within the class who are given a preference by the provisions of this statute.    One of appellees was a clerk and the others were skilled laborers, such as typesetters, pressfeeders and the like.

It is argued by counsel for appellant that the word laborer, as used in the statute, means unskilled laborer in contradistinction to a skilled laborer, or artisan; and that the word servant means an inferior or menial servant, in contradistinction to all other servants.

It is argued by counsel for appellees that the word employe, used in the title and in the body of the act, is determinative of the question. The act is, from its nature, to be construed liberally. But the word employe, as here used, can not, by any rule of construction, be applied in its broader sense, or otherwise than in connection with the words "laborer" and "servant." Its use in the title is restricted by these words in the body of the act, and its use in the term "such laborers and employes" is restricted by the preceding words "laborer" and "servant." We have then to determine if the appellees are to be included with those described as laborers or servants. There has been no construction of this statute by our Supreme Court, and decisions of other States construing like statutes are not altogether in harmony. Our attention is called to a former decision of this court in Epps v. Epps, reported in 17 Ill. App. 196. But the statute there under consideration was a different statute, upon another subject, and the clause there construed was, for reasons stated in the decision, subject to a strict construction. The provisions of this act are to be liberally construed. We can not, therefore, find anything in that case to guide here. These appellees were paid wages by the week, in sums ranging from $7 to $16 per week, and each of them performed manual service to some extent. The master in chancery reports that Newett, who is described as a clerk, was employed as a general clerk in the store and in purchasing supplies. If the words laborer and servant are to be construed as describing unskilled laborers and menial servants only, then these appellees are clearly not included; but if a broader and more liberal interpretation be given the words, to include all such as perform physical labor in and about the business of the employer, whether such labor be skilled or ordinary, then the appellees are within the act. We think that the latter interpretation should prevail.

To read the word laborer in the other and limited sense would be to give it the very narrowest and strictest construction possible, when, by reason of the nature of the act,

the words should receive a liberal construction. Nor does the ordinary and popular use of the word laborer conflict with this broader and more liberal interpretation. These appellees did in fact perform the work and labor of this printing office, and, however skilled they may be in their labor, it would be a perversion of the ordinary and popular meaning of the word "laborer" to apply it to the employes of this establishment to the exclusion of these men.

As above suggested, the decisions in other States interpreting the words "laborer," "servant," "work" and "labor," as used in statutes giving preference to such claims, are somewhat conflicting.

In P. & D. R. R. Co. v. Leuffer, 84 Pa. St. 168, it was held that a civil engineer was not within the meaning of the word laborer, and that only such as performed manual service could be included as laborers.

In Palmer v. Van Santvoord, 153 N. Y. 612, a statute giving preference to claim for "wages of the employes, operatives, and laborers" received construction. The court, while holding that the word employes could not be read in its broadest signification because of the accompanying words "operatives and laborers," yet held that it could not be so restricted as to exclude bookkeepers or persons employed to make sales; and held that the claim there in question, which was that of a traveling salesman, who, in addition to soliciting sales, set up and repaired machines sold, and was paid a salary of $100 per month, was included as the claim of an employe, under the statute, and that his salary should be held to constitute "wages" provided for by the statute.

The court said:

"Bookkeepers, or persons employed to make sales of merchandise, or of property manufactured by the corporation, are, we think, 'employes' within the meaning of the act, and their compensation earned is 'wages,' whether such persons are employed by the day or month or year, and whether the compensation is denominated salary or wages in the contract of employment."

In Stryker v. Cassidy, 76 N. Y. 50, the court held that the word "labor," used in a lien statute, included skilled as well as unskilled labor, saying:

"It is not any the less labor, within the general meaning of the word, that it is done by a person who is fitted by special training and skill for its performance. The language quoted makes no distinction between skilled and unskilled labor," etc.

In Harris v. Norvell, 1 Abb. N. C. 127, it was held that a reporter upon a newspaper was within the terms of the statute which provided for "laborers, servants and apprentices."

Other decisions holding to a liberal construction of like words, are Hovey v. Ten Broeck, 3 Rob. 316; Williamson v. Wadsworth, 49 Barb. 294; Vincent v. Bamford, 1 Jones & Sp. 506; Caraker v. Mathews, 25 Ga. 571; Gravatt v. The State, 25 Oh. St. 162; Pendergast v. Yandes, 124 Ind. 159; Flagstaff Co. v. Cullins, 104 U. S. 176.

While definitions given by lexicographers, general and legal, can be found which will accord with each of the interpretations contended for, and while decisions are not wanting to support either, yet we are disposed to regard those cases as the best considered and best reasoned which hold that the terms "work," "labor," "servant" and "laborer," used in statutes like this, should be held to include at least all service, the rendering of which involves some physical labor in the employer's business. To hold differently would be to apply a strict and narrow construction, contrary to the rule applying to such statutes.

We therefore hold that the appellees are within the provisions of the act as "laborers."

The next question presented is as to the relative priority of the claims of appellees and appellant.

Counsel for appellant contend that the effect of the statute is simply to prefer claims of this class over the claims of general creditors, who have acquired no superior right to the assets, and that it can not be given the effect of deferring previously acquired liens, like the chattel mortgage lien here in question. Doubtless a mortgagor has no power, in the absence of statutory provision, to create by contract a lien superior to a prior existing mortgage lien, except perhaps under admiralty law in case of

contracts for labor, etc., upon mortgaged vessels. But that a statute in force when the mortgage is made may operate to thereafter create a lien paramount to the lien of the mortgage, can scarcely be questioned. Jones on Chattel Mortgages (2d Ed.), 474–5.

The question then is, do the terms of this statute make these labor claims a preferred charge upon the property superior to the lien of a valid mortgage, which was recorded before the labor claims accrued? We will first consider the language of the statute as we would interpret it in the absence of any authority, and then consider the effect of the few decisions which we have been able to find construing like enactments.

The act in question, which is in part hereinbefore quoted, is a re-enactment of the act of 1887, with some slight modifications by way of enlargement. The act of 1887 provided as follows:

"That hereafter, when the property of any company, corporation, firm or person shall be seized upon by any process of any court of this State, or when their business shall be suspended by the action of creditors, or be put into the hands of a receiver or trustee, then in all such cases, the debts owing to laborers or servants, which have accrued by reason of their labor or employment to an amount not exceeding fifty dollars to each employe, for work or labor performed within six months next preceding the seizure or transfer of such property, shall be considered and treated as preferred debts, and such laborers or employes shall be preferred creditors and shall be first paid in full; and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata*, after paying costs. Any such laborer or servant, desiring to enforce his or her claim for wages under this act shall present a statement under oath, showing the amount due after allowing all just credits and set-offs, the kind of work for which such wages are due and when performed, to the officer, person or court charged with such property, within ten days after the seizure thereof on any execution or writ of attachment, or within thirty days after the same may have been placed in the hands of any receiver or trustee; and thereupon it shall be the duty of the person or court receiving such statement to pay the amount of such claim or claims to the person or

Heckman v. Tammen.

persons entitled thereto after first paying all costs occasioned by the seizure of such property out of the proceeds of the sale of the property seized; provided, that any person interested may contest any such claim or claims, or any part thereof, by filing exceptions thereto, supported by affidavit, with the officer having the custody of such property, and thereupon the claimant shall be required to reduce his claim to judgment before some court having jurisdiction thereof, before any part thereof shall be paid."

In each act it is provided that "such laborers or employes shall be preferred creditors, and shall be first paid in full." This language would in its simplest meaning indicate that these claimants were to be paid "first" of all creditors, whether the other creditors were secured or not, and without reference to the nature of the securities or liens. Is there any other language in the act which would conflict with or limit this meaning? We think not. On the contrary, the act of 1895 provides that "if there be not sufficient to pay them in full, the same shall be paid from the proceeds of the sale of the property seized." The question naturally occurs, seized by whom? Evidently by other creditors, who are, in spite of such seizure, deferred by the terms of the act to these claims. The fact of seizure implies a lien, either before existing or acquired by the act of seizure, and these claims are, by the terms of the act, to be paid from the proceeds of the property seized, irrespective of such liens. By the act of 1887, it was provided that if the proceeds of the property seized be applied to payment of such claims, the costs of the seizure should be first deducted.

Either the preference given by the act is simply a preference over other general creditors, not secured nor leinors, or it is a preference over all other creditors without reference to security or lien. There can be no logical ground for halting between the two propositions of construction.

If the statute meant that these claims should be preferred over any securities or liens of other creditors, then there is no apparent reason for holding that they should be preferred over some and not over others. But it is clear that

the act contemplates that some liens should be deferred to these claims, viz., the liens of creditors who have seized the property of the debtor and thereby caused a suspension of his business. It is stipulated that the action of appellant caused a supension of the business of Beeh, and we think that the constable placed in possession of the mortgaged property seized is such "person" or "trustee" as is designated by the second section of the act. The provision of that section is:

"Any such laborer or servant desiring to enforce his or her claim for wages under this act, shall present a statement under oath showing the amount due, the kind of work for which such wages are due, and when performed, to the officer, person or court charged with such property, within ten (10) days after the seizure thereof, on any execution or writ of attachment, or within thirty (30) days after the same may have been placed in the hands of any receiver or trustee, and thereupon it shall be the duty of the person or court receiving such statement to pay the amount of such claim or claims to the person or persons entitled thereto."

The few decisions which we have been able to find support the construction indicated. The only cases which are directly in point are Reynolds v. Black, 91 Iowa, 1, and Bell v. Hiner, 16 Ind. App. 184.

In the former case, the business of the debtor was suspended on July 2, 1891. Mortgages executed at various times from February 11, 1891, to June 29, 1891, were filed for record upon the day of the suspension of the business. The question presented was the priority of these mortgages over claims of laborers for labor performed within ninety days preceding the suspension. The decision involved the construction of a statute similar in its provisions to the Illinois act of 1887. The court, holding that the labor claims were by the terms of the act given priority over all other liens, including mortgage liens, said:

"This statute is before this court for construction for the first time, and, being somewhat out of the usual course of litigation, we find but little in the way of precedent to aid us in its construction. * * * It is contended that no lien is given to the laborer; that to give him preference

over existing liens is to displace such liens; and that the preference only applies to what is left after satisfying existing liens.    To so construe this statute would largely defeat its manifest purpose.    It is only when the assets have been seized, his business suspended by the action of creditors, or transferred to a receiver or trustee, that the statute applies. * * * By the seizure or action of creditors express liens are created that existed before the employe may assert his rights under this statute.    The preference given in the statute would usually be a barren privilege if deferred to prior existing liens.    The purpose of the statute is made plain by the provision that these preferred creditors 'shall first be paid in full'—a purpose that is emphasized by the concluding provision that they shall be paid by the person or court receiving their statement, 'after first paying all costs occasioned by the seizure of such property out of the proceeds of the sale of the property seized.' * * * Our statute provides * * * that the creditors shall be preferred, that the debts shall be first paid, and provides for its first payment under circumstances that preclude the idea that the preference is subject to prior liens."

In the latter case, Bell v. Hiner, an Indiana statute, similar in its provisions to the one here in question, was construed.    In that case the question of priority was between a mortgagee and a laborer, who claimed under the statute for labor performed after the execution and due recording of the mortgage.    The court said :

"Appellants assert, first, that by the statute no lien is created nor any charge made against the property unless it shall come into the hands of some officer, assignee, or other trustee under the court, to be administered upon according to law; secondly, that even if a lien is created it is junior to the lien of the mortgage.    Under our authorities neither position is tenable.    The statute, it is true, does not in terms create any express lien *eo nomine*, but the Supreme Court, in Bass v. Doerman, 112 Ind. 390, decided that by this statute a lien was given to the laborer superior to the rights of, and enforceable against, one to whom the property of the insolvent debtor was sold in payment of debts due to the purchaser, when the business of the debtor was by such action of the creditor thereby suspended.    The court's liberal construction of this statute has been approved in subsequent cases.    Farmers I. & T. Co. v. Canada, 127 Ind. 250; Aurora Bank v. Black, 129 Ind. 595; Pendergast

v. Yandes, 124 Ind. 159. * * * It is true, as urged by appellant's counsel, that the Bass case does not decide that the labor lien is superior to a prior mortgage, that question not being involved; but it does decide that the debt is a charge against the property in the hands of a purchaser for value. * * * Here the statute directs that the labor claim shall be preferred, and shall be ' first paid in full.' It being established, as it is by the Bass case, that the statute gives a lien for the labor claims, then it seems to us the intent that it shall be a paramount lien is clearly expressed. If it is to be ' first ' paid in full, we do not well see how the mortgage can come in before it. When the mortgagee accepted his mortgage he must be deemed to have done so with knowledge that if the business was continued and the contingency contemplated by the statute should occur, then the labor debts would be preferred and must be first paid. The law entered into the mortgage contract as a silent but potent factor, and the mortgagee accepted it subject to such rights as might accrue to others under the law. * * * For many centuries, in admiralty, the rights of seamen to their wages have been held superior to the mortgagees of the vessel. The J. A. Brown, 2 Lowell, 464; 2 Jones on Liens, Sec. 1775. In Mississippi the liens of agricultural laborers are made superior to prior mortgages. Buck v. Payne, 52 Miss. 271. In Michigan the wages of miners are given liens paramount to all others. McLaren v. Byrnes, 80 Mich. 275. That he ' shall be a preferred creditor and shall first be paid in full ' seems to us simple, plain English, easily understood, the meaning of which would not ordinarily be mistaken by the average man."

That the question admits of diversity of opinion is shown by the dissent of a portion of the court from the decision last cited. The disagreement, however, seems to have arisen from a variety of opinion as to what is expedient and just in the making of such provisions rather than from different views of what the legislature had provided.

In Dunklee v. Crane, 103 Mass. 470, a statute very different from the one here involved, was construed, and the decision is of interest only as holding that a statute which contained no express provision that the mechanic's lien there in question should have priority over mortgages made after the contract for labor was entered into, never-

Heckman v. Tammen.

theless had the effect, by necessary implication, of giving labor performed under such a contract priority over a mortgage, even where the mortgage was executed before the labor had been performed, but after the contract. The statute expressly provided that the liens should not avail or be of force " against any mortgage actually existing and duly recorded prior to the date of the contract under which the lien is claimed." It was evidently regarded as necessary to thus expressly exclude in order to avoid the preference of the lien to such mortgages. The court said in that case:

" The statute contains no express provisions that the lien shall attach and have priority over mortgages and other incumbrances created after the contract, but such is the necessary implication. If it be not so, the provisions of the third section are entirely useless. The nature of the security intended to be created by the statute necessarily leads to this result. Any other construction would defeat the manifest purpose of the legislature," etc.

Decisions in McGhee v. Edwards, 87 Tenn. 506; Fishell v. Morris, 57 Conn. 547; Sullivan v. Clifton, 55 N. J. L. 324, and Wright v. Sherman, 3 S. Dak. 290, are each based upon statutes giving liens, but no one of which contains any such provision for preference as does the statute here under consideration, in that it provides that these claims shall be " first paid," and " from the proceeds of the sale of the property seized."

We see no force in the contention that this act operates as a repeal of any part of the act providing for the recording of chattel mortgages. The mortgage act gives no force to a chattel mortgage as a paramount lien which it did not have at common law, and only provides for possession by the mortgagor upon proper execution, acknowledgment, recording, etc., and the effect of such mortgages as to third parties. It does prescribe that which is essential to make it valid; it does not enlarge its validity as at common law, but limits its validity to a specified period. If the mortgage act can be said to have any effect in changing the character of a chattel mortgage, it is to make it more clearly that

which equity regards it, viz., a lien or security, and for a limited period, rather than a sale subject to defeasance. The respective claims of appellant and appellees are liens. The mortgage act does not make appellant's lien superior to all others. The act under consideration does make appellees' lien paramount.

We hold that the statute gives priority to the claims of appellees over the chattel mortgage of appellant.

The contention that the evidence discloses that the labor performed by Barth and Knaup was not performed within the precise period set forth in their respective statements filed, is not, we think, of importance. The variance does not go to the merit of their claims or their rights under the statute. If appellant had desired to contest these claims, upon the ground that services had not been rendered as set forth in the statements, he should have filed his exceptions to the statements, as is provided by the statute in question.

The only remaining question is as to the payment of the fees of the master in chancery. These fees were paid by appellant, and the decree makes no provision for the recovery of any part of them by appellant. The costs of the hearing before the master in chancery were made necessary by the contest of appellant, and when appellant was defeated in that contest the court, in the exercise of its discretion, left the burden of such costs upon him. The statute leaves it to the discretion of the court to award the costs in chancery suits, and we see no reason for holding that the court erred in this regard.

The decree is affirmed.