### 1347.   COHEN *v.* ALDRICH.

The wages of a person whose duty under his employment is to act as a stenographer to the assistant manager of a manufacturing corporation,. to receive by dictation and transcribe his letters, to take care of letters pertaining to his office, and to see that letters are properly addressed and mailed, and generally to perform the duties of amanuensis and stenographer in the office, whose salary is payable semi-monthly,. there being no time fixed for the termination of his contract of service,. are not subject to process of garnishment.

Certiorari, from Chatham superior court—Judge Charlton. August 4, 1908.

Submitted November 12,—Decided November 25, 1908.

*Alexander & Edwards,* for plaintiff.

*Cann, Barrow & McIntire,* for defendant.

POWELL, J. According to the record, Aldrich, the exemption of whose wages from garnishment is the subject-matter of the present controversy, "at the time of suing out such summons of garnishment, was employed by the Southern Cotton-Oil Company at a salary of $75 per month, said salary being paid semi-monthly,. there being no time fixed for the termination of the contract of service, as stenographer for C. D. Jordan, assistant manager for

said company; his duties being to receive by dictation and transcribe for said manager his letters, to take care of the letters pertaining to said office, and see that the same were properly addressed and mailed, and generally to perform the duties of an amanuensis or stenographer for said assistant manager." In *Abrahams* v. *Anderson*, 80 *Ga.* 570 (5 S. E. 778, 12 Am. St. R. 274), to which reference is hereinafter made, the agreed statement of facts was as follows: "Andrew Anderson, junior, was, at the time of the suing out of the garnishment process, and is now, employed at a salary of $125 a month, there being no time fixed for the termination of the contract of service, as private secretary and stenographer to the president of the Central Railroad and Banking Company of Georgia, . . his duties being to receive by dictation and transcribe for the president his letters, and such other papers and documents as he may desire, to take care of the papers and records in his office, travel with him as secretary when required, to receive and forward the president's mail when left in the office in the absence of the president, and generally to perform the duties of an amanuensis, stenographer, and private secretary, including the keeping of such books and statements as would generally be kept in the office of the president of a railroad company." If we were authorized to exercise a free intellectual judgment as to the matter, instead of being bound by the precedents, we would not hesitate to hold that Aldrich was not a manual laborer; it is our personal view that *Abrahams* v. *Anderson* was incorrectly decided. We are bound by the precedents, and the *Abrahams* case clearly controls this one.

Judge Charlton, whose decision is under review, has prepared a charming opinion which appears in the record. It is worth reproduction, and will be quoted in lieu of any further discussion of the question on our part. It is as follows: "C. D. Cohen brought his action in the justice court for the third district, G. M., against R. M. Aldrich, to recover $35, with interest, alleged to be due on a promissory note, garnishment issuing against the Southern Cotton-Oil Company. On the return day the defendant claimed exemption from garnishment, on the ground that he was a stenographer, and therefore a laborer. It appears, from an agreed statement of facts, that Aldrich was employed by the Cotton-Oil Company at a salary of $75 a month, payable semi-monthly, no time being fixed for the termination of the contract of service; that he

was stenographer to the assistant manager of the company, taking letters from dictation of that official and transcribing them, taking care of letters pertaining to the office, and seeing that the same were properly addressed and mailed, and generally performing the duties of amanuensis and stenographer to that person. In his answer the justice says he understood from the plaintiff's attorney that 'in addition to the agreement of facts set out in the fifth paragraph of said petition for certiorari [which are those just recited], it was agreed that stenography is a skilful employment, and the art of shorthand writing is acquired as the result of special study and training, and proficiency in it is the result of steady practice and experience. These facts were used by plaintiff's attorney in argument, without objection that they were not agreed to.' A traverse was filed to this return, and the jury trying the same found generally in favor of the traverse, apparently covering this point; and on this subject the argument is now addressed to the judicial cognizance of the court. It appears that at the appropriate time Aldrich made the point 'that he has been employed by the garnishee above named as a stenographer, that he is a day-laborer, and that as such his wages are exempt from the process of garnishment.' The justice was not impressed by this contention as a sound proposition of law, under the facts, and found the wages subject. The certiorari results, impressively reinforced by an affidavit in forma pauperis.

"Is a stenographer—one who receives letters and transcribes the same, preserves office records, addresses and mails letters, and performs generally the duties of amanuensis to the assistant manager of a corporation—the kind of laborer whose wages are exempt under the statute? Or are the duties and the occupation so distinctively mental as to exclude the fair inference of manual work? In time our Supreme Court has held that locomotive engineers, street-railroad conductors and motormen, clerks in retail stores, railroad clerks, bookkeepers, public-school teachers, farm-hands, painters, bartenders, are laborers. In the case of *Abrahams* v. *Anderson*, 80 *Ga.* 570, practically the identical question now before the court came up for determination. Anderson, whose wages were sought to be subjected, received $125 a month, no time being fixed for the termination of the contract. He was private secretary and stenographer to the president of a railroad company. It was

his duty to receive and transcribe letters and other papers, to take care of the papers and documents as secretary, to receive and forward mail, and generally to perform the duties of an amanuensis, secretary, and stenographer, including the keeping of such books as are ordinarily kept in a railroad president's office. The similarity in kind and scope of the duties of Anderson and those of the plaintiff in certiorari are manifest; those of Anderson, if there be any substantial difference, suggesting more individual latitude and discretion. Manifestly I might stop at this point, since the *Anderson* case, being directly in point and unreversed, justifies me in concluding that the plaintiff in certiorari is such a laborer as the law contemplates when garnishment exemption is invoked.

"But it is urged that stenography is an 'art,' a skilful employment, the result of special study and training, and that proficiency in it is the result of steady practice and experience. This is true of everything the result of which, when done, commends itself. Proficiency comes to the bricklayer and carpenter and blacksmith from steady practice and experience, and unless they specially study and train, the work they do is not apt to appeal to the unfortunate who has to pay for it. Special study and training and steady practice and experience do not of themselves make arts. Under our garnishment statute, the true distinction is, does mental labor or manual labor predominate? In the case of *Prather* v. *Pantone,* 125 *Ga.* 808 [54 S. E. 663], the defendant was a builder of cabs and pilots for locomotives, but he boldly proclaimed himself 'a skilled mechanic and an expert,' and said that 'holding his job was as much dependent upon his mental ability as upon his ability to perform manual labor, the one being about as important as the other.' While it is true that stenography tends to cultivate the memory, the memory is not an intellectual faculty. Fine memories usually attend upon great minds, but the converse is not necessarily true. There have been marvelous memories unilluminated by intelligence. Blind Tom's ears received in perfect integrity musical sounds which his fingers reproduced upon the piano, but he was practically an idiot, and no one ever confounded him with a true musician. The incidencies of mathematical prodigies without minds are numerous. For the purposes of the statute in question, the real test, after all, to be ascertained from the decisions, is independence of thought, discretion, the exercise of choice, initiative,

, decision, mental responsibility. The motorman is much given to . manual exertion,—one hand on the controller, the other on the brake, his foot on the gong,—and yet he is frequently called upon to exercise his mind in careful thought, the judiciousness of which may involve life and death; but because the dominancy of his work is physical, he is classed as a laborer, under our garnishment statute. This is eminently true of most of the callings which the Supreme Court has exempted from the operation of the garnishment law. Wherein does the stenographer differ?

"If we are to take the *Prather* case, supra, as a guide, skilfulness does not render the salary subject. One may be an expert— the highest expression of that particular line of occupation—and still be within the protection of the statute. The law encourages proficiency and skill; it does not fine a man for cultivating them. That a stenographer is skilled and trained can not affect the nature of the work he does, although it does affect its character. After acquiring the trade, the test is the method of carrying it on. It is difficult to conceive of anything more thoroughly manual than the work of a stenographer. Receiving the sounds from the lips of another, he registers what he hears and reproduces what he receives. He exercises no independence of thought, no initiative, no discretion. The test of his efficiency is his absolute acceptance of what is given him and its return unchanged. If his employer indulges in the pastime of murdering the king's English, he must become a 'particeps criminis' and join in the assassination. So pronouncedly are the physical faculties involved in stenography that there comes a time when the hand refuses to work, although the mental faculties may be entirely clear. It is pre-eminently manual labor, work of the hand. I have heard it said that in the efficient corps which records the proceedings of Congress, individuals are not permitted to take down what is said beyond a limited number of minutes, the hand becoming unreliable, although the mind may be in definite working order. I am not without corroborating experience in this direction, having enjoyed the privilege of being in my youth the reporter of this circuit. If to the plaintiff's duties were added that of transcribing on the typewriter, surely no one who has gone through with that back-breaking experience will hesitate to range it in the category of hard physical labor. Whilst the tendency on the part of the Supreme Court has

been to treat each case upon its individual merit, and whilst the *Oliver* case in 98 *Georgia* [*Oliver* v. *Macon Hardware Company*, 98 *Ga.* 249 (25 S. E. 403, 58 Am. St. R. 300)] would seem designed to curb the effect of previous liberal construction, the fact remains that in this extensive and useful calling, pursued by many breadwinners under hard conditions and upon scant remuneration, the dominant part of the work is physical. Just when a person ceases to be a laborer and crosses the shadowy line of mental vocation, within our garnishment statute, will always be difficult of determination. But Aldrich comes within the ruling of the *Anderson* case, and his wages should be exempt. His calling, which has been adorned by the delightful meanderings of the ubiquitous Pepys, has in time attracted many minds. Those who love the good things of literature will not fail to recall those strenuous times when Mr. Tommy Traddles, with the assistance of Enfield's Speaker or a volume of parliamentary debates, standing by the table, with his finger on the page to keep the place, and his right arm flourishing above his head, like Mr. Pitt, Mr. Fox, Mr. Sheridan, Mr. Burke, Lord Castlereagh, Viscount Sidmouth, or Mr. Canning, worked himself into the most violent heats and delivered the most withering denunciations on the profligacy and corruption of the opposition, as represented by Aunt Betsy and Mr. Dick, until the latter began to be afraid that he had really done something tending to the annihilation of the British constitution and the ruin of the country; whilst David Copperfield followed him on paper with what might as well have been 'Chinese inscriptions on an immense collection of tea chests, or the golden characters on all the 'great red and greer bottles in the chemists' shops.' David summed up, 'I really did work, as the common expression is, like a cart-horse.'

"Between the conflicting view of the Supreme Court and the justice of the third militia district, with some illumination from my own cognizance, judicial and otherwise, I am constrained to follow the *Anderson* case and sustain the certiorari. Let an order be taken to that effect."                    *Judgment affirmed.*