## 2841.  THOMPSON *v.* PASSMORE.

Where a landlord furnishes to his cropper everything to make the crop, except labor, and that is furnished by the cropper and the cropper's family, the net amount due the cropper after full settlement with the landlord is in the nature of wages paid to day laborers, and is not subject to process of garnishment while in the hands of the landlord.

DECIDED SEPTEMBER 30, 1911.

Garnishment; from city court of Dawson—Judge Edwards. July 8, 1910.

*W. H. Gurr,* for plaintiff in error.

*H. A. Wilkinson,* contra.

HILL, C. J. Thompson was a cropper for Hill during the year 1909. Under a verbal contract between the landlord and the cropper the former was to furnish the land, the stock, the supplies, and everything necessary to make the crop, except the labor. This was to be furnished by the cropper and the members of his family. In making the crop and in the performance of his labor the cropper was to work under the direction and control of the landlord. For his labor the cropper was to receive one half of the net proceeds of the lint cotton raised on the farm, and one half of all the net proceeds of the other farm products (such as cane, ground-peas, potatoes, and hogs) except the corn and the cottonseed, all of which was to be the landlord's. The landlord was to advance during the year, from time to time, supplies necessary for the support of the cropper and his family. At the end of the year a settlement was made between the landlord and the cropper, and there re-

mained in the hands of the landlord $98.29 net, which belonged to the cropper, under the contract. Before a settlement was made, however, a creditor of the cropper, holding a judgment rendered in 1903 for $250, sued out summons of garnishment against the landlord, and the landlord, in his answer to the summons of garnishment, set out the above-stated indebtedness of $98.29 to the cropper, arising under the cropper's contract with him for the year 1909. The cropper claimed that this fund in the hands of his landlord was exempt from the process of garnishment. The trial judge held to the contrary, and this judgment constitutes the only alleged error for the consideration of this court. There was no controversy in the evidence. The contract between the landlord and the tenant, as above set out, was admitted, and the judgment of $250 was admitted. The cropper testified that his family consisted of his wife and five children, three of the children being minors and two of them girls over the age of twenty-one years. The principal part of the work on the farm was done by the cropper and his oldest son, Ben, these two doing all the ploughing and all the heavy work incident to a farm. His wife and his children assisted him in hoeing and gathering the crop. Besides, on several occasions during the year, he exchanged work with two other adult sons, these two sons helping him for several days, and he in return helping them for several days. He was also compelled to employ additional labor for a few days to assist in picking his cotton. He had no contract with his two adult daughters, but they lived with him and were supported by him.

We think, under the facts of this case and adjudications of the Supreme Court, and a proper construction of the statute law of this State exempting the wages of a laborer from garnishment, that the court erred in holding that the wages of the cropper were not exempt from the process of garnishment. It has been repeatedly held by our Supreme Court that the statute exempting from process of garnishment the daily, weekly, or monthly wages of journeymen mechanics and day-laborers (Civil Code (1910), § 5298) should be given a liberal construction, to protect the rights of those for whom the statute was passed. *Caraker* v. *Mathews,* 25 *Ga.* 571; *Butler* v. *Clark,* 46 *Ga.* 468. And in designating the laborers who were embraced within the terms of the act, the Supreme Court has not confined itself to the express letter of the act,

but has in many cases made most liberal constructions in order to carry out its manifest purpose. The act exempting from process of garnishment the daily, weekly, or monthly wages of the persons characterized as journeymen mechanics and day-laborers was enacted for the purpose of furnishing the means of support to the laborer and those dependent upon him. It was intended to apply to those whose sole income for support and maintenance of themselves and family is the proceeds of their manual labor. From time to time our Supreme Court has held that locomotive engineers, street-railway conductors, motormen, clerks in retail stores, railroad clerks, bookkeepers, public-school teachers, farm-hands, painters, bar-tenders, and stenographers were laborers, and that their wages, whether paid by the day, week, or month, semi-annually or annually, were exempt from the process of garnishment. *Cohen* v. *Aldrich*, 5 *Ga. App.* 256 (62 S. E. 1015). In the case of *Oliver* v. *Macon Hardware Co.*, 98 *Ga.* 249 (25 S. E. 403, 58 Am. St. Rep. 300), the court declares that the test for determining who is a laborer in any particular case is whether the work is mainly of a kind that requires mental skill, or business capacity, and involves the exercise of the intellectual faculties, rather than work the doing of which depends upon mere physical power to perform ordinary manual labor,—in other words, whether mind or muscle preponderates in the performance of the work. Of course, every man, however intellectual his pursuit, may be in one sense a laborer, and every man who works with his hands, in order to win, must mix with his work and muscle, to some extent at least, his brain; and just in proportion as man mingles his thought with his labor does he excel, whatever may be his vocation. But it ought not to be difficult for a discriminating mind, under the test laid down by our Supreme Court, to determine in each particular case under which category the particular laborer falls. Does the sweat of the laborer's brow come from the work of his brain or the work of his hands? If the latter, he is a laborer, although he may be a skilled laborer. The character of his work must determine the question. *McPherson* v. *Stroup*, 100 *Ga.* 228 (28 S. E. 157). Clearly, the act was made to protect and to give bread to the intelligent laborer as well as to the ignorant laborer. The most liberal case decided by our Supreme Court is that of *Caraker* v. *Mathews*, supra. In that case "Jordan [the laborer] was to be Caraker's overseer for a year,

at the price of $250, two hundred or two hundred and fifty pounds of pork, and thirty bushels of corn—the money to be paid daily, or weekly, as might be needed for the support of Jordan's family," and the court held that Jordan was a day-laborer, in the meaning of the law, and as such entitled to have his daily, weekly, or monthly wages exempt from the process of garnishment. When a person was employed to work on a farm for six months at a stipulated price, but by the terms of his contract he could call, at any time during his service, for such portion of his earnings as he might require to supply his necessities, his wages were not subject to garnishment. *Prothro* v. *Grubbs, 71 Ga.* 863. There is no rational distinction on this point between a cropper and one who makes a contract to labor on a farm for a year, with the right to have advances according to necessities. To no character of laborer does the divine declaration, "In the sweat of thy face shalt thou eat bread," apply more peculiarly and strongly than to what is known as the cropper class. The laborer of this class owns no land, no personal property of any consequence, has limited personal credit, and has usually a large family to support. The passing seasons only change the character of his labor. Preparing the soil, planting the seed, harvesting the crop, it is labor, hard manual labor, spring, summer, and winter, from sun up to sun down. He exercises no individual judgment, and takes no initiative, but is always under the control and direction of the landlord. The man and his family live as they labor, on advances, sometimes grudgingly furnished by the landlord. When the year of labor closes and the day of settlement arrives and the advances are charged up, rarely is sufficient left to the cropper to feed and clothe himself and his family. In this case the year's result from the labor of the family of seven left, after settlement with the landlord, was the meager pittance of $98.29. If this little sum should not be sacred to the support of the cropper and his wife and children, and should not be exempt from the claim of any creditor of the cropper, however just the claim may be, we know of no product of human labor that should be. If the wages of the overseer, the conductor, the engineer, the clerk, and the stenographer are exempt, why should not the wages of the cropper be also exempt? Advances made during the year are equivalent to wages paid during the year, and the net balance left to the cropper at the end of the year, after settlement

with the landlord, is in the nature of wages. In *McElmurray* v. *Turner,* 86 *Ga.* 215 (12 S. E. 359), the Supreme Court held that the share of the crop after the landlord had been fully settled with was simply a mode of paying the cropper wages for the labor of herself and her children; that the part of the crop which she and her children had made was in the nature of wages, and that her special laborer's lien was not lost because her children aided her in making the crop, nor because she had also hired some outside assistance to help harvest the crop. The *McElmurray* case is almost identical in its facts with the instant case, and in principle is controlling. In the *Caraker* case, supra, Chief Justice Lumpkin declares that "all who come within the spirit of the act [meaning the exemption from garnishment act] should be brought within its provisions. I know no reason why the employees of corporations, or even journeymen mechanics, . . should have privileges withheld from those who till the earth. The cravings of hunger can no more be appeased in the one case than the other." The decision in the *McElmurray* case, supra, answers also the suggestion that as the cropper in the present case was assisted by two adult daughters and occasionally exchanged work with two sons, and hired some little assistance, he was a contractor, and not a laborer. It would be absurd to hold that because of these facts the work of the cropper rose to the dignity of intellectual labor and his wages were not exempt. If the landlord can be successfully garnished at the close of the year and the cropper's share of the crop subjected, the result might be disastrous. The landlord would be unwilling to make advances to support the cropper, if he was to incur the annoyance and risk of litigation with the cropper's creditors at the close of the year; and surely the cropper would have little encouragement to finish his contract, if he knew that he would lose the small result of his year's labors just when he needed it most. In that event the temptation would be strong to desert his landlord and his own crops and hire himself and his family as day laborers to be paid in money by the day. By this method he would be free from the pestiferous process of garnishment and reap the reward of his labors. In so far as we can, we will spare him the temptation to break his contract with his landlord, by holding that his part of the crop in the hands of the landlord is not subject to the process of garnishment,

but, being in the nature of wages due the laborer, is clearly within the spirit of the statutory exemption.          *Judgment reversed.*

POWELL, J., dissenting.   I can not concur with my associates. It is true that the part of the crop which comes to the cropper is in the nature of wages; still I think that the very nature of this contract puts him in that class of working people who are regarded by the law as contractors or quasi-contractors, and excludes him from the class designated in the exemption laws as "journeymen mechanics and day-laborers." The distinction here asserted does not depend upon whether the work is chiefly manual or is largely intellectual, nor upon whether it is performed in the sun or shade, but upon the nature of the business the workman is carrying on. The honest toil of the village blacksmith, for example, is proverbial in song and story, and still, when he runs his own shop, the debts due to him by his customers are not exempt from garnishment. *Talum v. Zachry,* 86 *Ga.* 573 (12 S. E. 940). The fact that a laborer is paid by the piece, or by the actual quantity of work turned out, is not material to the question before us, for that fact does not make him a contractor; but it is material if he undertakes to do a definite job, such as building a house, or repairing a bridge, or cultivating a crop, upon a definite contract as to what he is to receive; for then he is viewed as a contractor, and not as a laborer. *Johnson v. Hicks,* 120 *Ga.* 1002 (48 S. E. 383), distinguishing and reconciling *Swift Mfg. Co. v. Henderson,* 99 *Ga.* 136 (25 S. E. 27), and *Moore v. Hendry,* 111 *Ga.* 863 (36 S. E. 921). The cropper is, generally speaking, a farm-hand who declines to work for fixed wages and to work generally on his employer's farm, but who makes a special contract whereby he is to work a particular piece of ground and is to have in return therefor a certain percentage of the net profits. He and his family are supported during the year out of advances made by the landlord and taken out of his portion prior to the settlement. It seems to me that the net sum remaining in the hands of the landlord after final settlement is so essentially of the nature of profits on the cropper's contract as to prevent its being considered as ordinary wages. The exemption law primarily contemplates that laborers shall have at hand their wages as due them from day to day, from week to week, or from month to month, as a fund from which they may furnish support to themselves and families, and that they shall not be deprived of this means of support through its

being tied up on other debts—debts which are not less honest, but, in legal contemplation, less urgent. The cropper, in every case where the question of exempting his part of the crop arises, has had this support furnished him by the landlord; for there is no fund in the hands of the landlord which in any event can be reached by garnishment, until these living expenses have been deducted. The overplus, if any, belongs in common honesty to the creditor, and not to the cropper. Debt may seem to be a cruel master; but he who owes debts ought to pay them, even if to do so reduces the expenditures of himself and his family back to the necessities of life; and law ought to make him pay thus far at least.

The opinion of the court seems to me to create an unjust distinction between a cropper and a tenant. A tenant and a cropper, for instance, may work adjoining fields; under the tenant's contract he may pay the landlord a percentage of the crop as rent and retain the remainder after paying for the supplies, as his remuneration for his labor; and his net interest in the crop is unquestionably subject to execution and other legal process; the cropper contracts that the landlord shall have a percentage of the crops, and that after the supplies are paid for he shall have the remainder as his remuneration for his labor; and, under the decision about to be rendered, his net interest in the crop is exempt. To my mind it seems unfair to say that the summer rays which fall upon the head of the tenant as he toils is mere sunshine, and that the similar rays which fall upon the cropper are hot sun, or that the exudation which trickles down their cheeks alike is in the one case perspiration, and in the other case common sweat. If it were my province to enter into the political economy of the question, I would say that it is bad policy to take away from the cropper even that small basis of credit which exists in his favor as to his expectancy in the crop; his status for purposes of credit is low enough as it is. The present case, it is true, involves an old debt, but a new debt would stand on the same basis—even a new debt for family or crop supplies furnished by any one other than the landlord. However, I do not put my dissent on political economy, but on the law.